IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

BILL McCHRISTIAN                                                                                     PLAINTIFF

v.                                    Civil No. 11-5125

SHERIFF KEITH FERGUSON;
DR. HUSKINS; and DEPUTY
CHAMBERS                                                                                              DEFENDANTS

**REPORT AND RECOMMENDATION OF THE MAGISTRATE JUDGE**

This is a civil rights action filed by the Plaintiff under the provisions of 42 U.S.C. § 1983. Plaintiff, Bill McChristian, proceeds *pro se* and *in forma pauperis.*

McChristian is currently incarcerated in the Arkansas Department of Correction (ADC). However, the claim before me arises out of McChristian's incarceration at the Benton County Detention Center (BCDC). Specifically, McChristian maintains he was denied adequate medical care for pre-detention injuries, high blood pressure, and an infection in his hand. He names as Defendants: Sheriff Keith Ferguson; Dr. Huskins; and Deputy Chambers.

Defendants filed a motion for summary judgment (Docs. 38 to 40). Plaintiff was allowed to respond to the motion at the evidentiary hearing. The hearing was held on May 8, 2012. The motion is now ready for decision, as is the issue of whether there are triable issues of fact for a jury.

**1. Applicable Standard**

A jury demand has been made in this case. A pretrial evidentiary hearing may be utilized to determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Johnson v.

Bi–State Justice Center, 12 F.3d 133, 135 (8th Cir. 1993)(quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 251-52 (1986)). When both sides present evidence, the procedure "resembles a summary judgment motion with live evidence." Id. The Court must avoid credibility determinations, believe the Plaintiff's evidence, and draw all justifiable inferences in the Plaintiff's favor. Id. at 136.

### 2. Testimony and Evidence Presented

At the evidentiary hearing, the following witnesses testified: (1) Linda Gifford; (2) Mark Stupelis; (3) Robert Holt; (4) Bill McChristian, the Plaintiff; (5) Captain Christopher Sparks; and (6) Dr. John Huskins, a Defendant. For purposes of discussion, the testimony will be summarized beginning with McChristian's.

### Billy Jean McChristian

McChristian was booked into the BCDC on April 4, 2011. He was in pretrial status until January of 2012. On March 4, 2012, he was transferred to the ADC.

Prior to being booked into the BCDC, McChristian was taken to Mercy Hospital because of injuries sustained when he was arrested. Plaintiff's Exhibit (hereinafter Plff's Ex.) 1. At Mercy Hospital, McChristian was diagnosed with a closed head injury. Id. at pg. 1. He was prescribed hydrocodone-acetaminophen to be taken every four hours as needed for pain and Lorazepam.[1] Id.

After he was booked in, McChristian put in a medical request stating that he had medication he was supposed to receive every four hours. Defendants' Exhibit (hereinafter Defts' Ex.) 2 at pg. 1. On April 6th, the nurse responded that McChristian would be seen by the doctor.

---

[1] "Lorazepam is used to relieve anxiety. Lorazepam is in a class of medications called benzodiazepines. It works by slowing activity in the brain to allow for relaxation." http://www.nlm.nih.gov/medlineplus/druginfo/meds/a682053.html (accessed October 22, 2012).

Id. McChristian was seen that day by Dr. Huskins as a follow-up on the hospital visit. Defts' Ex. 3 at pg. 1. Dr. Huskins ordered Vicodin[2] and Tylenol. Deft's Ex. 3 at pg. 1. McChristian testified that prior to being seen by Dr. Huskins on April 6th he received no prescribed medication.

McChristian's first request asking for his high blood pressure medication was submitted on April 8th. Defts' Ex. 2 at pg. 2. McChristian testified he and Dr. Huskins discussed his blood pressure on April 15th and Dr. Huskins indicated they were having problems getting McChristian's medical records. Dr. Huskins told McChristian that his blood pressure would be checked on a weekly basis. McChristian testified that when he was without his blood pressure medication, he experienced severe headaches and dizzy spells when standing up.

McChristian testified that he first noticed a redness on his hand on April 8th or 9th. However, given the fact that he had submitted medical requests during this period of time and did not mention his hand, McChristian said it might have been April 12th before he had problems with his hand. McChristian thought it was a spider bite because other inmates said they had been bitten by spiders.

McChristian testified that by April 18th his hand was bad. His first medical request about his infected or swollen hand was submitted on April 20th. Defts' Ex. 2 at pg. 9. He indicated he had a bite or something on his hand making it swollen and sore. Id. He asked that something be done before his hand "fell off." Id. In response, he was told he was on the list to see the doctor. Id. On April 22nd, in response to a call from a jail nurse, Dr. Huskins prescribed Bactrim and Ibuprofen. Defts' Ex. 3 at pgs. 3 & 32. According to McChristian, if an antibiotic

---

[2]Vicodin is a brand name for hydrocodone. It is a combination product containing acetaminophen and hydrocodone. http://www.nlm.nih.gov/medlineplus/druginfo/drug_Va.html (accessed October 3, 2012).

had been prescribed for him, he did not receive it. On April 24th, Dr. Huskins was notified the swelling had increased. Id. at pg. 32. Dr. Huskins stated McChristian should be taken to the emergency room. Id.

McChristian was seen at Mercy Medical on April 24th. Plff's Ex. 2. He was diagnosed with cellulitis[3] and he was to return for a recheck in two days. Id. at pg. 1. He was prescribed clindamycin (an antibiotic to be taken four times daily), Ibuprofen (every six hours as needed for pain and inflammation), mupirocin (a topical ointment to be applied to the affected area), oxycodone-acetaminophen (to be taken every four hours as needed for pain), and reserpine-hydrochlorothiazide (to treat high blood pressure to be taken once daily). Id. at pg. 1.

McChristian testified that the deputies told him they could not get his prescriptions filled because it was Easter Sunday. According to McChristian, the emergency room doctor told the deputies that there were pharmacies open and the prescriptions, in particular the blood pressure medication, needed to be filled. McChristian testified his blood pressure was very high when he got to the hospital. He believed it had been 220/150. In fact, he said he was told he was not going anywhere until his blood pressure came down.

Mercy Medical records indicate that McChristian's initial blood pressure reading was 205/123. Plff's Ex. 2 at pg. 2. The last vitals taken before his discharge indicate his blood pressure was 122/77. Id. at pg. 6.

The records indicate McChristian was taken back to the emergency room later that day because he was unable to get his medication and had increased swelling and pain. Plff's Ex. 2

---

[3]"Cellulitis is a bacterial infection of the deepest layer of your skin. Bacteria can enter your body through a break in the skin - from a cut, scratch, or bite. Usually if your skin gets infected,[it is] just the top layer and it goes away on its own with proper care. But with cellulitis, the deep skin tissues in the infected area become red, hot, irritated and painful." http://www.nlm.nih.gov/medlineplus/cellulitis.html (accessed October 3, 2012).

at pg. 3. His blood pressure at the second admission was 157/92. Id. at pg. 2. McChristian testified it was three to five days before he started receiving the prescribed medication. McChristian testified that despite the antibiotic and Ibuprofen he received, his hand continued to get worse. For this reason, McChristian "poked a hole" in his hand and pulled out "white string like things." McChristian testified that this helped and the swelling gradually began going down.

On May 2nd, McChristian submitted a medical request asking for something for pain. Defts' Ex. 2 at pg. 11. In response, the nurse wrote that he had received both Aleve and Ibuprofen that morning and his Vicodin would be there by that evening. Id. She indicated his fungal cream would be ordered. Id. On May 12th, McChristian asserted that his hand was swollen again and hurting. Id. at pg. 18. He was to be seen by the doctor the following morning. Id. On May 15th, McChristian submitted a medical request stating that he had been told the doctor would give him something for pain and he had not received anything. Id. at pg. 20. In response, he was put on the list to see the doctor. Id.

McChristian testified it was probably a month before his hand got better. During this time, his cell mates "threw" him out of the cell he was in because the inmates did not want to get staph infection. McChristian was moved to a hospital cell where the doctor or nurse could observe him.

McChristian did not have any bandages for his hand. He testified he asked for some and even offered to buy them. His sister brought some to the jail but he ended up using his t-shirt on his hand.

McChristian testified that on June 21st, his medications were lost for a week or two. However, the medical request McChristian submitted on that day only refers to his blood pressure medication. See Defts' Ex. 2 at pg. 30. In response, he was told he was getting one of his blood pressure medications and the other had been ordered. Id.

McChristian continued to submit medical requests regarding a variety of complaints including: his blood pressure and blood pressure medication; broken ribs; a fractured disc in his back; foot fungus; a dislocated thumb; numbness of his hands; bladder problems potentially caused by an enlarged prostate; shoulder pain; indigestion; sore throat; a sharp knot on his head; and hip pain. Defts' Ex. 2 at pgs. 1 to 72.

McChristian stated that he did not have his blood pressure medication, his blood pressure was high, or the medication was ineffective in requests dated April 12th, April 17th, May 15th, May 21st, May 22nd, May 24th, May 26th, June 3rd, June 18th,[4] June 21st, July 4th, July 13th, July 17th, July 20th, July 25th, July 26th, July 30th, July 31st, August 7th, August 9th, August 10th, August 11th, August 17th, August 18th, August 23rd, September 11th, September 13th, September 18th, September 22nd, September 28th, October 1st, October 11th, October 20th, October 28th, and November 2nd. Id. at pgs. 2-3, 7, 23-25, 26-27, 29-30, 32, 35-49, 51, 54, 57, 60, 62-63, 66, 69-72. In some of the requests, high blood pressure is mentioned only in the part of the form where the inmate is to list the nature of the request. McChristian testified that after he put in a medical request, it was usually four or five days or longer until he was seen by the doctor.

---

[4] This request is dated June 18th. However, the date of receipt and the date of the nurse's response are September 20th. Defts' Ex. 2 at pg. 29.

With respect to his high blood pressure, McChristian testified he did not believe it was checked more than five or six times. On one occasion he beat the door and pushed the emergency button three or four times until Deputy Chambers responded. McChristian's blood pressure was high on that occasion.

The medication logs indicate McChristian was prescribed Amlodipine, a blood pressure medication, and began receiving it on April 27th. Defts' Ex. 2. In May another blood pressure medication, Atenolol, was added and he began receiving it on May 26th. Id. With the exception of a few sporadic days, McChristian continued to receive one, or both, of the medications through December of 2011.

The medication logs indicate McChristian received hydrocodone beginning April 7th. Defts' Ex. 2 at pg. 73. He received the hydrocodone fairly consistently until December 31, 2011. Id. at pgs. 73-149. There were, however, some sporadic days when the medication was not provided to him. Id. No medication records have been submitted for dates in 2012.

According to the logs, McChristian did not begin receiving Lorazepam until June and then received it, with the exception of some sporadic days, until December 31, 2011. Id. 2 at pgs. 96, 106-09, 110, 112, 114, 117-19, 122, 125, 128, 130, 134. In fact, there was at least one day, December 6th, on which he received no medication because his pills were missing. Id. at pg. 136.

With respect to the named Defendants, McChristian testified he did not mean to name Deputy Chambers as a Defendant. McChristian stated Deputy Chambers did not do anything wrong.

Next, McChristian testified that Dr. Huskins was a good doctor as far as he was concerned. McChristian stated that Dr. Huskins tried to help him but that he was not at the jail all the time.

Finally, with respect to Sheriff Ferguson, McChristian believed Sheriff Ferguson was liable because he was in charge and established the rules and regulations for the jail. McChristian indicated he asked to speak with the Sheriff but was not allowed to do so. McChristian believed the delay in his receiving prescribed medication was the fault of the nurses and the deputies. He indicated that at first they did not attempt to obtain his medication.

**Linda K. Gifford**

Gifford testified she was McChristian's sister. She stated that at the time of McChristian's arrest he was taking high blood pressure medicine.

McChristian asked Gifford to call the jail about his blood pressure mediation and to bring it to the jail. When she called, she was told medication could not be brought into the jail from the outside. Captain Holly told her that McChristian could ask to see the jail doctor.

McChristian called and told Gifford that he had been bitten by a spider. McChristian asked her to call the Sheriff. Gifford testified she did call and talk to Captain Holly and asked if they could get her brother some medical help. Captain Holly indicated he would check into the situation.

Gifford also went to the jail to visit McChristian. She noted his hand was swollen and he had red streaks going up his arm. Gifford testified the next time she visited him that he had a t-shirt on his arm and some gauze on his hand.

Gifford visited McChristian twice a week the entire time he was at the BCDC. She testified his hand eventually healed up but it took some time. With respect to his blood pressure medication, she testified that McChristian said he was light headed and had severe headaches.

Gifford testified she called Sergeant Dunn for four consecutive days asking him to get medication for the infection caused by the spider bite and McChristian's high blood pressure medication. Sergeant Dunn kept on saying they would get the medication.

Gifford testified she was aware of the fact that McChristian was seen by the doctor a few times. She indicated she never spoke to Sheriff Ferguson, Dr. Huskins, or Deputy Chambers.

**Mark Stupelis**

Stupelis testified that he was McChristian's cell mate in a two bunk cell in the medical pod for about twenty days in April of 2011. He stated that McChristian was using t-shirts, towels, and socks to dress his hand.

Stupelis testified that McChristian's hand was extremely swollen with red streaks the entire time they were housed together. He observed McChristian trying to get medical care over the intercom but he did not receive any assistance.

Stupelis believed McChristian had seen the doctor one time. Initially it was believed it was a spider bite but then he was told it was staph infection. Stupelis testified it was clear the guards had something against McChristian.

**Robert Holt**

Holt was incarcerated in the BCDC in April of 2011. He was in the medical pod with McChristian for two or three weeks.

AO72A
(Rev. 8/82)

Holt testified that McChristian had a nasty staph infection on his hand. There was a large open sore and the hand was badly swollen. Holt could not recall McChristian getting any type of medical treatment.

**Captain Christopher P. Sparks**

Captain Sparks testified he is currently the jail administrator and started in that capacity in November of 2011. He has been with the Sheriff's Office for fourteen years. When an inmate is transported with prescription medications, the jailer puts the medication into a box for the nursing staff. If there is a doctor's order, Captain Sparks believed the nurse "might" approve it through the doctor.

In Captain Sparks' opinion, the medication distribution policy does not cover an inmate coming into the jail with an unfilled prescription. This was an issue that would be left to the doctor. Captain Sparks testified he is not involved in what medications are prescribed.

**Dr. John Huskins**

Dr. Huskins testified he is presently at Mercy Medical Clinic. In the Spring and Summer of 2011, he provided medical care to inmates at the BCBC.

Dr. Huskins testified that he first saw McChristian on April 6th for a post-hospital follow up. Efforts were made to obtain McChristian's medical records but were unsuccessful.

Dr. Huskins first learned of McChristian's problem with his hand on April 22nd, when the nurse called him and advised him that McChristian's hand was swollen and red. Dr. Huskins prescribed Bactrim, an antibiotic, and Ibuprofen. On April 24th, the nurse called Dr. Huskins and stated McChristian's hand was more swollen. Dr. Huskins gave orders that McChristian should be taken to the hospital.

AO72A
(Rev. 8/82)

McChristian was diagnosed with cellulitis. Dr. Huskins testified the infection could come from a bite or a wound. The swelling is caused by a soft tissue reaction to the infection. He noted that we all have staph on our skin and if there is a break in the skin an infection can develop. There is a fiber type tissue in the infected area.

Dr. Huskins testified the infected area should be washed three times a day and antibiotic cream applied. He also stated that the infection heals better if it is kept open.

McChristian returned from the hospital with several prescriptions. The pharmacy used by the jail is located in Alabama or Mississippi. The medications are shipped to the jail by overnight service. According to Dr. Huskins, when the nurse receives prescriptions from the emergency room, if she is comfortable with what the emergency room doctor prescribed, she simply orders the medication. If the nurse feels uncomfortable about the medications prescribed, she will consult the jail doctor. The pharmacy did not have the blood pressure medication ordered by the emergency room physician so Dr. Huskins ordered another blood pressure medication.

Dr. Huskins testified he was not usually involved in determining if inmates were receiving their medication unless an inmate mentioned it when Dr. Huskins saw him. Instead, that was a duty performed by the nurses.

Dr. Huskins saw McChristian for a variety of complaints including: chest wall pain; hip and back pain; pain in his hand; shoulder aches; frequent urination; reflux; and dry heels. Defts' Ex. 3. Additionally, McChristian's blood pressure was taken on April 8th (140/90), April 19th (128/90), April 26th (146/90), May 3rd (156/90), May 10th (notation his blood pressure was checked but it was not recorded), May 17th (160/100), May 26th (170/120), May 30th (140/88),

June 9th (186/98), June 22nd (150/98), June 28th (126/80), July 20th (180/100), July 21st (140/86). Defts' Ex. 3. His blood pressure continued to be checked after July but more infrequently. Id. Dr. Huskins testified that a blood pressure of 130/80 was considered normal. The jail medication logs indicate McChristian began taking Amlodipine on April 27th, was prescribed Atenolol beginning on May 26th, and, with the exception of a few sporadic days, took either one, or both, of the medications through December of 2011.

### 3. Discussion

"Where a prisoner needs medical treatment prison officials are under a constitutional duty to see that it is furnished." Crooks v.Nix, 872 F.2d 800, 804 (8th Cir. 1989). "Deliberate indifference to an inmate's serious medical needs violates the Eighth Amendment's ban against cruel and unusual punishments." Krout v. Goemmer, 583 F.3d 557, 567 (8th Cir. 2009)(citing Farmer v. Brennan, 511 U.S. 825, 828 (1994)). To prevail on an Eighth Amendment claim, Plaintiff must prove that Defendants acted with deliberate indifference to his serious medical needs. Estelle v. Gamble, 429 U.S. 97, 106 (1976). The deliberate indifference standard includes "both an objective and a subjective component: 'The [Plaintiff] must demonstrate (1) that [he] suffered [from] objectively serious medical needs and (2) that the prison officials actually knew of but deliberately disregarded those needs.'" Jolly v. Knudsen, 205 F.3d 1094, 1096 (8th Cir. 2000)(quoting Dulany v. Carnahan, 132 F.3d 1234, 1239 (8th Cir.1997)).

McChristian's claims stem from three aspects of his medical care at the BCDC: (1) on the delay in his receipt of medication for his pre-detention injuries; (2) the delay in treating his high blood pressure; and (3) the delay in treating the infection in his hand. In this case, the

-12-

evidence submitted shows that McChristian was treated on multiple occasions by Dr. Huskins and the jail nurses.

McChristian was prescribed, and provided with, pain medication, blood pressure medication, and antibiotics, among other things. While he did not immediately receive medication prescribed by the hospital on April 4th, McChristian began receiving pain medication the day after he was seen by Dr. Huskins, April 7th. Defts' Ex. 2 at pg. 73. McChristian continued to receive one or more pain relieving medications through the remainder of the year. Id. at pgs. 73-149. The records also indicate he was prescribed bed rest on several occasions. See e.g., id. at pg. 76.

McChristian's blood pressure was monitored in accordance with Dr. Huskins' instructions and McChristian was started on blood pressure medication, Amlodipine, on April 27th. Id. at pg. 80. On May 26th, McChristian began taking Atenolol, another blood pressure medication. Id. at pg. 94.

When Dr. Huskins was advised of the situation with McChristian's hand, he prescribed an antibiotic and Ibuprofen. Defts' Ex. 3 at pgs. 3 & 32. Two days later, when Dr. Huskins was told that McChristian's hand had gotten worse, McChristian was sent to the emergency room. Plff's Ex. 2. In fact, he was taken to the hospital a second time that same day. Id.

"Delay is not a factor that is either always, or never significant. Instead, the length of delay that is tolerable depends on the seriousness of the condition and the ease of providing treatment." McGowan v. Hulick, 612 F.3d 636, 640 (7th Cir. 2010). In this case, there were short delays in jail personnel obtaining prescription medication for McChristian. However,

nothing was presented suggesting Dr. Huskins even knew of the delays or that they were somehow attributable to him.

Moreover, "[a] prisoner alleging a delay in treatment must present verifying medical evidence that the prison officials ignored an acute or escalating situation or that [these] delays adversely affected his prognosis." Holden v. Hirner, 663 F.3d 336, 342 (8th Cir. 2011)(internal quotation marks and citations omitted). McChristian has presented no such evidence. The lack of such evidence is fatal to McChristian's claim. Crowley v. Hedgepeth, 109 F.3d 500, 502 (8th Cir. 1997).

Finally, to prevail on a claim of deliberate indifference, McChristian "must show more than negligence, more even than gross negligence, and mere disagreement with treatment decisions does not rise to the level of a constitutional violation." Popoalli v. Correctional Medical Services, 512 F.3d 488, 499 (8th Cir. 2008)(internal quotation marks and citation omitted). Even "[m]edical malpractice does not become a constitutional violation merely because the victim is a prisoner." Estelle v. Gamble, 429 U.S. 97, 106 (1976). "Under the constitution . . . the range of acceptable medical care is broad." Jenkins v. County of Hennepin, Minn, 557 F.3d 628, 633 (8th Cir. 2009)(citations omitted). While "[m]ultiple contacts with medical personnel do not necessarily preclude a finding of deliberate in difference," Beck v. Skon, 253 F.3d 330, 333 (8th Cir. 2001), McChristian has failed to present evidence that Dr. Huskins exhibited deliberate indifference to McChristian's serious medical needs. As set forth above, Dr. Huskins ordered medications, tried different medications, saw McChristian multiple times, ordered his blood pressure monitored, and sent him to the hospital. In fact, McChristian himself testified that Dr. Huskins was a good doctor.

With respect to Sheriff Ferguson, there is no evidence he made any decisions regarding McChristian's treatment, was aware of McChristian's need for medical care, or saw any of McChristian's grievances and medical requests. Without some type of personal involvement, Sheriff Ferguson cannot be held liable.[5] Lenz v. Wade, 490 F.3d 991, 995 (8th Cir. 2007)(in § 1983 action, prison officials cannot be held liable under respondeat-superior theory; officials must know of and disregard excessive risk to inmate health and safety); Keeper v. King, 130 F.3d 1309, 1314 (8th Cir. 1997)(general responsibility for supervising prison operations is insufficient to establish personal involvement required for § 1983 liability; official who is not involved in medical decisions and has no medical expertise cannot be liable for medical staff's diagnostic decisions).

An official capacity claim "is functionally equivalent to a suit against the employing governmental entity." *Veatch v. Bartels Lutheran Home*, 627 F.3d 1254, 1257 (8th Cir. 2010). In other words, an official capacity claim asserted against Sheriff Ferguson is treated the same as a claim against Benton County itself. *See Murray v. Lene*, 595 F.3d 868, 873 (8th Cir. 2010).

To establish Benton County's liability under § 1983, "plaintiff must show that a constitutional violation was committed pursuant to an official custom, policy, or practice of the governmental entity." *Moyle v. Anderson*, 571 F.3d 814, 817 (8th Cir. 2009)(citation omitted). The applicable law has been summarized as follows:

> There are two basic circumstances under which municipal liability will attach: (1) where a particular municipal policy or custom itself violates federal law, or directs an employee to do so; and (2) where a facially lawful municipal policy or custom was adopted with "deliberate indifference" to its known or obvious

---

[5] At the beginning of the evidentiary hearing, it was noted that McChristian's complaint indicated he was pursuing only individual capacity claims. The Court, however, allowed McChristian to come forward with any evidence he had regarding a policy or custom of Benton County.

> consequences. <u>Seymour v. City of Des Moines</u>, 519 F.3d 790, 800 (8th Cir.2008). There need not be a finding that a municipal employee is liable in his or her individual capacity before municipal liability can attach. <u>Speer v. City of Wynne</u>, 276 F.3d 980 (8th Cir.2002); <u>Parrish v. Luckie</u>, 963 F.2d 201, 207 (8th Cir.1992) ("A public entity or supervisory official may be held liable under § 1983 even though no government individuals were personally liable."). Where an official policy is itself unconstitutional or directs employees to take unconstitutional action, no evidence beyond a statement of the policy and its exercise is necessary to establish § 1983 liability. <u>Szabla v. City of Brooklyn Park</u>, 486 F.3d 385, 389-90 (8th Cir.2007).

*Id*. at 817-18.

McChristian has made no showing of an unconstitutional custom or policy on the part of Benton County with respect to the provision of medical care. There is no basis on which Benton County can be held liable on the official capacity claim.

**4. Conclusion**

Based on the foregoing, I recommend that Plaintiff's oral request to dismiss all claims against Deputy Chambers be granted. Further, I recommend that Defendants' summary judgment motion (Doc. 38) be granted and the case be dismissed.

**The parties have fourteen (14) days from receipt of the report and recommendation in which to file written objections pursuant to 28 U.S.C. § 636(b)(1). The failure to file timely objections may result in waiver of the right to appeal questions of fact. The parties are reminded that objections must be both timely and specific to trigger de novo review by the district court.**

DATED this 25th day of October 2012.

/s/ *Erin L. Setser*
HON. ERIN L. SETSER
UNITED STATES MAGISTRATE JUDGE

AO72A
(Rev. 8/82)